# LAW OFFICES OF DEAN T. CHO, LLC
**The Woolworth Building**
**233 Broadway, Suite 2200**
**New York, New York 10279**
**(718) 344-8188**
**Dtcho100@gmail.com**

November 19, 2018

**VIA ECF**
Hon. James Orenstein
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *China Power Equipment, Inc., et al. v. Song, et al.,* 16-CV-2914 (KAM)(JO)

Dear Judge Orenstein:

I am counsel for Defendant DeHeng Law Offices ("DHLO") and am writing in response to the November 14, 2018 letter of Plaintiffs' counsel James Orr, Esq. Mr. Orr's letter unfortunately misleadingly describes DHLO's position concerning the documents listed in DHLO's privilege log and thereby seeks to contrive an unnecessary discovery dispute.

Mr. Orr's letter fails to disclose salient facts including that:

(1) Mr. Orr's October 23, 2018 email to DHLO's prior counsel (pertinent portions of which are attached as Ex. A hereto), stated "If DHLO will not agree to produce the documents in the Privilege Log immediately, **we will be asking the court to require *in camera* submission of the documents and to resolve the dispute**" (Emphasis added).

(2) Mr. Orr's letter does not disclose that during counsel's meet and confer discussions, **I expressly told Mr. Orr that DHLO were agreeable to Plaintiffs' earlier request for the *in-camera* submission of the documents in question and asked him to prepare a letter to the Court to that effect.** DHLO's willingness to voluntarily tender the documents for *in camera* review is consistent with DHLO having nothing to hide and the privileged nature of the listed documents.[1]

(3) In now seeking an order directing DHLO to produce those documents directly to Plaintiffs' counsel, Plaintiffs and Mr. Orr have changed their tune and no longer seek *in camera* review.

---

[1] The documents in DHLO's privilege log are in Chinese and therefore presumably must be translated to permit the Court's *in camera* review. I had previously informed Mr. Orr that DHLO could have the documents promptly translated, but that Plaintiffs would have to bear the cost of such translation under established caselaw authority. *In re P.R. Elect. Power Authority,* 687 F.2d 501 (1st Cir. 1982) (holding party seeking disclosure of foreign language documents responsible for paying translation costs); *accord Nature's Plus Nordic A/S v. Natural Organics,* 274 F.R.D. 437 (E.D.N.Y. 2011) (*citing cases including In re P.R. Elect. Power*). Accordingly, DHLO requests that any *in camera* review of DHLO's privileged documents be conditioned on Plaintiffs' advance payment of all costs associated with the translation of such documents into English by an independent and certified translator selected by DHLO. DHLO would be willing to provide Plaintiffs with three written quotes for the cost of such translations.

1

As confirmed by DHLO's privilege log, the listed documents clearly qualify as privileged under U.S. law.  Paragraphs 57, 65, 72, 73 and numerous other paragraphs of Plaintiffs' Fourth Amended Complaint repeatedly refer to DHLO and its attorneys (who include Yu Nu and Fan Zhaoxia) as acting as legal counsel and the listed documents reflect confidential communications between DHLO attorneys (Nu Yu and Fan Zhaoxia) and DHLO's client Zhongxi (including Zhongxi's CFO, Yarong Feng, who is identified as such at Paragraph 7 of Plaintiffs' Fourth Amended Complaint), relating to the provision of legal advice and services.  The Court's *in camera* review will confirm same.

Implicitly acknowledging that the documents are privileged, Plaintiffs argue that the crime-fraud exception to the attorney-client privilege applies.  However, the Second Circuit has held that "a party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof."  *U.S. v. Richard Roe, Inc.,* 68 F.3d 38, 40 (2d Cir. 1995).  Moreover, "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud."  *Id.*  This is because "If it did, the privilege would be virtually worthless because a client would not freely give, or an attorney request, evidence that might support a finding of culpability.  Instead, the exception applies only when the court determines that the client communication or attorney work product in question was itself in furtherance of a crime or fraud."  *Id.*  Here, Plaintiffs' letter sets forth no evidence to satisfy this requirement.  In any event, **the Court's *in camera* review of the documents will dispel any notion that DHLO's communications were intended to further the commission of any crime or fraud**.

Plaintiffs also argue that DHLO has waived the privilege.  However, Plaintiffs' cases all involve situations where the withholding party had put the disputed privileged documents in issue by partially disclosing their contents or by making "factual claims" that put the documents' contents in issue.  Plaintiffs do not describe any examples of DHLO doing that here.  Instead, Plaintiffs essentially argue that DHLO's denials of wrongdoing and legal defenses constitute a waiver and require the disclosure of privileged documents because the documents may be relevant to the merits of the parties' claims and defenses.  Plaintiffs' argument is unsupported by their cited authority, ignore Plaintiffs' opportunity to conduct a deposition, and would eviscerate the attorney-client privilege because any denial of wrongdoing would be deemed a waiver.

Mr. Orr's letter also argues that DHLO cannot assert the attorney-client privilege because that privilege purportedly is not recognized under Chinese law.  That argument fails for at least two reasons.  First, U.S. law properly governs the privilege issue here.

In determining which country's law applies to a privilege dispute involving foreign attorney-client communications, courts in this Circuit consider the country with which the communications "touch base."  Under this analysis, the Court applies "the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether [the] communications should remain confidential, unless that foreign law is contrary to the public policy of this forum."  "The jurisdiction with the 'predominant interest' is either 'the place where the allegedly privileged relationship was entered into' or 'the place in which that relationship was centered at the time the communication was sent.'" *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 117, 119, 2013 U.S. Dist. LEXIS 96721, *22-23 (S.D.N.Y. 2013) (citations omitted).

2

Here, the U.S. clearly has the predominant and most direct and compelling interest in applying its law to the privilege issues. Plaintiffs' Fourth Amended Complaint asserts U.S. law claims and is replete with allegations concerning DHLO's purported conduct and solicitation of business in the U.S. (4th Amended Complaint Par. 25) including that "DHLO specifically directed its fraudulent legal opinion and advice at issue herein to the lawyer Ofsink in New York, knowing it would be relied on by China Power President Segal in New Yo[r]k, and knowing it would be used by China Power in New York to fraudulently raise money in New York." Thus, according to Plaintiffs' own complaint, DHLO's role as counsel was centered in New York. Thus, Plaintiffs' own allegations support application of U.S. law here.

Even if the Court finds that Chinese law properly governs DHLO's privilege claims, Chinese law clearly recognizes the functional equivalent to the attorney-client privilege. While the exact term "attorney-client privilege" is not used, Article 38 of the "Law of the People's Republic of China on Lawyers" (Ex. B hereto) expressly provides in pertinent part:

> A lawyer shall keep confidential the things and information that he comes to know during his legal practice which his client or another person does not want other people to know, with the exception of the facts and information about a crime which his client or another person prepares to commit or is committing to endanger State or public security or seriously endanger another person's personal safety or safety of property.

The foregoing text is mandatory, unambiguous and is invested with force of law. The statute's terms are easily analogous to the attorney-client privilege, are motivated by the same public policy concerns of promoting full and complete communications between lawyer and client without fear of adverse disclosure, and even embody a similar crime-fraud exception. This statutory authority exposes Plaintiffs' misplaced reliance on *Wultz v. Bank of China Ltd.,* 979 F. Supp. 2d 479, 492 (S.D.N.Y. 1993), given that case glosses over Art. 38 and given that the withholding party therein did not assert that Chinese law recognized the attorney-client privilege, with the Court declaring: "BOC does not seriously contest the proposition that Chinese law does not include the attorney-client privilege  or work-product doctrine as understood in American law." Here, DHLO does assert that an analogous attorney-client privilege exists under Chinese law and cites Article 38's clear and unambiguous terms in support thereof. The *Wultz* case's distinction between a legal requirement vs. an ethical duty of an attorney to maintain confidentiality of client communications (subject to an analogous crime-fraud exception) finds no support in the text of Article 38. Moreover, the acknowledged sanctions available against attorneys for violating Article 38 – which the *Wultz* court acknowledges include disbarment and imprisonment – clearly are criminal type sanctions that are consistent with the confidentiality obligation having force of law, as opposed to a mere ethical duty, consistent with the fact that imprisonment is not a remedy for mere ethical violations under U.S. law.

DHLO therefore respectfully consents to the Court's *in camera* review of the documents appearing on its privilege log, subject to such review being ordered conditioned on Plaintiffs' advance payment of all costs associated with the translation of such documents into English by an independent and certified translator selected by DHLO. Such an order would obviate the need for the Court to expend valuable resources on having a conference or hearing on this matter.

3

Respectfully submitted,

/s/

Dean T. Cho

Attachments
cc: Opposing counsel of record (via ECF)

# EXHIBIT A

*Hussain v. Burton & Doyle of Great Neck, LLC*, 2016 WL 6088309, at *4 (E.D.N.Y. Oct. 18, 2016) (citations omitted).

In the present case, fundamental fairness requires disclosure of the communications. The truth of virtually all of DHLO's claims herein – such as, for example, its claims that "DeHeng had no reason to believe that Zhongxi and Mr. Song never intended to carry out the Management Entrustment Agreement" or that "According to information obtained by DeHeng in 2008, Xi'an Feijing Science and Technology Co. did not operate any transformer business in 2008 because of the transfer to Zhongxi" – needs to be assessed by examination of DHLO's communications with Zhongxi. The integrity of DHLO's legal advice is *the issue*. The communications are not privileged, and the documents should be produced.

Alternatively, the documents are also discoverable under the crime fraud exception. "It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *Cafex Communications, Inc. v. Amazon Web Services, Inc.*, 2018 WL 1737686, at *6 (S.D.N.Y. Feb. 8, 2018), citing *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984). The crime-fraud exception to the attorney-client privilege or work-product protection applies when there exist: "(i) a determination that 'the client communication or attorney work product in question was itself in furtherance of the crime or fraud' and (ii) 'probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity.' " *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999). "This covers 'a fraudulent scheme, an alleged breach of fiduciary duty or an accusation of some other wrongful conduct.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 180 F. Supp. 3d 273, 281–82 (S.D.N.Y. 2016); *see also, e.g. Abbott Labs. v. H&H Wholesale Services, Inc.*, 2018 WL 2459271, at *5 (E.D.N.Y. Mar. 9, 2018).

Finally, DHLO states in response to Plaintiff's Interrogatory No. 1 that "[t]he Management Entrustment Agreement (the "MEA") **_is_** and was **_enforceable_**." (emphasis added). If that is true, DHLO is clearly obligated to turn the documents over to China Power and An Sen at their request. First, the documents were created when, if the MEA "was" enforceable, China Power's An Sen completely controlled Zhongxi and was thus effectively DHLO's client. Second, and in any event, if the MEA "is" enforceable, China Power's An Sen still completely controls Zhongxi and is asking for its documents. Please produce the documents immediately.

If DHLO will not agree to produce the documents on the Privilege Log immediately, we will be asking the court to require *in camera* submission of the documents and to resolve the dispute.

I feel that DHLO continues to fail to participate in discovery in good faith. Plaintiff will consider also seeking sanctions if its becomes necessary to again involve the Court as to any of the matters I have addressed herein.

James Craig Orr, Jr.

Heygood, Orr & Pearson

6363 North State Highway 161, Suite 450

Irving, Texas 75038

214 237 9001

Toll free 877 446 9001

Fax 214 237 9002

jim@hop-law.com

www.hop-law.com

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

# EXHIBIT B

## Administrative Law

Law of the People's Republic of China on Diplomatic
Personnel Stationed Abroad

Law of the People's Republic of China on the People's Armed
Police

Food Safety Law of the People's Republic of China

Law of the People's Republic of China on Protecting Against
and Mitigating Earthquake Disasters

Fire Protection Law of the People's Republic of China

Decision of the Standing Committee of the National People's
Congress on Amending the Law of the People's Republic of
China on Protection of Cultural Relics

Decision of the Standing Committee of the National People's
Congress on Amending the Frontier Health and Quarantine
Law of the People's Republic of China

Law of the People's Republic of China on Progress of Science
and Technology

Decision of the Standing Committee of the National People's

Law of the People's Republic of China on Lawyers

No. 76

The Law of the People's Republic of China on Lawyers, revised
and adopted at the 30th Meeting of the Standing Committee of
the Tenth National People's Congress of the People's Republic of
China on October 28, 2007, is hereby promulgated and shall go
into effect as of June 1, 2008.

Hu Jintao

President of the People's Republic of China

October 28, 2007

Law of the People's Republic of China on Lawyers

(Adopted at the 19th Meeting of the Standing Committee of the
Eighth National People's Congress on May 15, 1996, amended in
accordance with the Decision on Amending the Law of the
People's Republic of China on Lawyers made by the Standing
Committee of the Ninth National People's Congress at its 25th
Meeting on December 29, 2001, and revised at the 30th Meeting
of the Standing Committee of the Tenth National People's
Congress on October 28, 2007)



Administrative Law

Law of the People's Republic of China on Diplomatic
Personnel Stationed Abroad

Law of the People's Republic of China on the People's Armed
Police

Food Safety Law of the People's Republic of China

Law of the People's Republic of China on Protecting Against
and Mitigating Earthquake Disasters

Fire Protection Law of the People's Republic of China

Decision of the Standing Committee of the National People's
Congress on Amending the Law of the People's Republic of
China on Protection of Cultural Relics

Decision of the Standing Committee of the National People's
Congress on Amending the Frontier Health and Quarantine
Law of the People's Republic of China

Law of the People's Republic of China on Progress of Science
and Technology

Decision of the Standing Committee of the National People's

Law of the People's Republic of China on Lawyers

inviolable.

A lawyer shall not be legally liable for the opinions he presents as
an agent ad litem or defender in court, with the exception of the
views he presents to endanger State security, maliciously slander
another person, or seriously disrupt the court order.

Where a lawyer is, in accordance with law, detained or arrested
because he is suspected of committing a crime when
participating in litigation, the organ that detains or arrests him
shall, within 24 hours after the execution of detention or arrest,
have his family members, his law firm and the lawyers
association to which he belongs informed of the fact.

Article 38 A lawyer shall keep confidential the secrets of the State
and commercial secrets that he comes to know during his legal
practice and shall not divulge the private affairs of the parties
concerned.

A lawyer shall keep confidential the things and information that
he comes to know during his legal practice which his client or
another person does not want other people to know, with the
exception of the facts and information about a crime which his
client or another person prepares to commit or is committing to
endanger State or public security or seriously endanger another
person's personal safety or safety of property.

Article 39 A lawyer shall not act as agent for both parties involved
in one and the same case, and shall not act as agent where there