# HO&P | HEYGOOD, ORR & PEARSON

**6363 N. State Highway 161, Suite 450, Irving, TX 75038**

**214.237.9001 | 877.446.9001 | 214.237.9002 F**

**www.hop-law.com**

November 28, 2018

<u>VIA ECF</u>
Hon. James Orenstein
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      RE:    No. 16-CV-2914 (KM) (JO);
                  *China Power Equipment, Inc. et al. v. Yongsing Song, et al.*

Dear Judge Orenstein:

Plaintiff China Power writes regarding an ongoing discovery dispute that the parties in the above case are unable to resolve. Plaintiff requests the Court address this at the status conference scheduled for December 3, 2018.

As the Court will recall, Plaintiff alleges that Defendant DeHeng Law Offices (DHLO) knowingly aided and abetted breaches of fiduciary duty by then-officers of China Power by materially assisting a scheme by the officers to fraudulently raise and steal millions. DHLO prepared key transaction documents and provided a critical legal opinion that an agreement it created was enforceable in China. The "Consent" signed by DHLO is attached.

Plaintiff's Interrogatory No. 7 asks DHLO to "identify each United States corporation that has filed with the SEC a consent provided by [DHLO] regarding the corporation's reliance on [DHLO's] opinion of PRC law." *See* DHLO's Second Amended Responses and Objections to Plaintiff's First Set of Interrogatories (attached hereto) at No. 7. Among other things, Plaintiff believes that other such consents and opinions by DHLO will demonstrate that the consent and opinion in this case represent a marked departure from DHLO's customary practice. For example, in other legal opinions for which DHLO provided such a consent, DHLO did not make the unqualified representation of enforceability that it did in this case because, Plaintiff contends, DHLO knew that such an unqualified representation was indefensible. (*See, e.g.* two other DHLO opinions attached hereto).

Hon. James Orenstein
United States District Court
November 28, 2018
Page 2

In any event, as to Plaintiff's Interrogatory No. 7, the Court has already overruled DHLO's objections to the interrogatory and granted Plaintiff's motion to compel back on October 3, 2018. [Status Conference #161]. Amazingly, DHLO continues to assert objections to the interrogatory. DHLO should be sanctioned by the Court for continuing to press the objections and thus making this letter and a hearing on it necessary.

"Subject to" its objections (that have already been overruled), DHLO responds to Interrogatory No. 7 as follows: "after performing a reasonable search, DeHeng has not found such consent." This answer is demonstrably false. Indeed, in the course of describing its objections, DHLO admits it has provided so many such consents that it claims "[i]t is difficult to group every consent that DeHeng, a large-size law firm, has signed in these circumstances." Further, a brief search on Google found the attached two consents/legal opinions by DHLO (as well as others). If Plaintiff's counsel can find consents by DHLO in a matter of minutes on the internet, DHLO has not performed "a reasonable search" and has thus not responded to Interrogatory No. 7 "fully" and in good faith.

The law regarding answers to interrogatories is well-established:

> In order to ensure that each interrogatory is answered "separately" and "fully," see Fed. R. Civ. P. 33(b)(3), the responding party is required "to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories...." *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, No. 312 CV 1015, 2016 WL 865299, at *8 (N.D.N.Y. Mar. 2, 2016); *see Zanowic v. Reno*, No. 97 Civ. 5292, 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000) ("In responding to interrogatories ... a party is under a duty to make a reasonable inquiry concerning the information sought in the interrogatories, and a party's failure to describe his efforts to obtain the information sought ... renders his responses insufficient."); *Braham v. Perelmuter*, No. 3:15 CV 1094, 2016 WL 1305118, at *3 (D. Conn. Apr. 1, 2016); *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000) ("A party served with interrogatories is obliged to respond ... not only by providing the information it has, but also the information within its control or otherwise obtainable by it.").

*Neogenix Oncology, Inc. v. Gordon*, CV144427JFBAKT, 2017 WL 4233028, at *2 (E.D.N.Y. Sept. 22, 2017); *see also, e.g., Edebali v. Bankers Standard Ins. Co.*, CV147095JSAKT, 2016 WL 4621077, at *2 (E.D.N.Y. Sept. 6, 2016) (ordering party to "supplement his answer to the extent such information is within his control or is otherwise obtainable.").

The information sought by Interrogatory 7 is obviously in DHLO's "control" or "otherwise obtainable" by DHLO. As to DHLO's baseless claim of attorney-client privilege, Interrogatory No. 7 is expressly limited to consents that have been filed with the SEC.

Hon. James Orenstein
United States District Court
November 28, 2018
Page 3

The undersigned counsel for Plaintiff has conferred in good faith with counsel for DHLO in an effort to resolve this dispute without court action to no avail. DHLO should be ordered "to fully and completely answer" Interrogatory 7 "not only by providing the information it has, but also the information within its control or otherwise obtainable by it."

Plaintiff also requests that DHLO be ordered to pay a reasonable attorney fee and expenses related to having to move to obtain answers without objection to this interrogatories in the amount of $1,000. *See, Chandler v. Janssen Pharm., Inc.,* , 2018 WL 4378160, at *2 (E.D.N.Y. Aug. 10, 2018) ("[I]t is generally appropriate, at a minimum, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking disclosure and/or in seeking discovery sanctions."), quoting *Casagrande v. Norm Bloom & Son, LLC*, 2014 WL 5817562, at *12 (D. Conn. Nov. 10, 2014); *see also, gen. Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group*, 2018 WL 4489286, at *22 (S.D.N.Y. Sept. 19, 2018) ("monetary sanctions are considered among the 'mildest' sanctions for discovery misconduct") (citations omitted).

                                            Respectfully submitted,

                                            */s/ James Craig Orr, Jr.*
                                            James Craig Orr, Jr.
                                            **Attorneys for Plaintiffs**

cc: All Appearing Counsel of Record (via ECF)

## CONSENT

We hereby consent to references to our firm in the sections of this Registration Statement of China Power Equipment, Inc. entitled "The Company – Business Overview- Corporate History" and "Business – Corporate History" for the following point: "DeHeng Law Office, our PRC counsel, has advised us that in their opinion the Management Entrustment Agreement is legal and enforceable under PRC law."

We also consent to the reference to our firm under the caption "Experts" included in this Registration Statement with the description as: "DeHeng Law Office, located at 12th Floor, Tower B, Focus Place, No.19, Finance Street, Beijing, P.R.C. 100032, our PRC counsel, has advised us that in their opinion the Management Entrustment Agreement is legal and enforceable under the laws of the PRC. We have relied upon their opinion, given the authority of the firm as experts in the laws of the PRC."

DeHeng Law Office

*Nu Yu*

October 23, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CHINA POWER EQUIPMENT, INC., AN SEN :
(XI'AN) POWER SCIENCE & TECHNOLOGY CO., :
LTD., and CONCORDE EQUITY II, LLC,   :     16 Civ. 2914 (KAM) (JO)
                                     :
            Plaintiffs,              :
                                     :
      -- against --                  :
                                     :
YONGZING SONG, XI'AN AMORPHOUS ALLOY :
ZHONGXI TRANSFORMER CO., LTD.; YARONG :
FENG; DANGSHENG CHEN; SIU KUEN LEUNG; :
NICOLE CHEN; GUOAN ZHANG; JUNYI LI;  :
BEIJING DEHENG LAW OFFICES,          :
                                     :
            Defendants.              :
----------------------------------------------------------------x

## DEFENDANT DEHENG LAW OFFICES' AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and the Court's October 3, 2018 order denying the motion for protective order, defendant DeHeng Law Offices ("DeHeng"), by its attorneys, Dean Cho, serves the following Amended Responses and Objections to Plaintiff China Power Equipment, Inc.'s First Set of Interrogatories (the "Interrogatories," and each an "Interrogatory").

### INTERROGATORIES

**INTERROGATORY NO. 1:** Do you contend that the Management Entrustment Agreement is or was ever enforceable? If yes, please state the factual basis for this contention and identify any documents upon which you base this contention.

**ANSWER:**

Yes. DeHeng contends that the Management Entrustment Agreement (the "MEA") is and was enforceable. The MEA is part of a "variable interest entity" ("VIE") structure that is used by

hundreds of Chinese companies to go public in the United States or Hong Kong. VIEs are a loosely-defined structure and have been commonly used to achieve different legal and accounting purposes.

The MEA is valid under the Contract Law of the PRC. In 2016, the Chinese People's Supreme Court ruled that the VIE structure in that case did not violate the Contract Law. In addition, the Chinese government has issued policy directives that are both an effort to regulate VIEs and also an acknowledgement of their legality.

**INTERROGATORY NO. 2:** Please provide the name, business and residential address and phone number of all people who were involved in the drafting or authoring of the Management Entrustment Agreement.

**ANSWER:**

DeHeng attorneys Nu Yu and Zhaoxia Fan were involved in the drafting or authoring of the Management Entrustment Agreement. They may be contacted through undersigned counsel.

**INTERROGATORY NO. 3:** Please provide the name, business and residential address and phone number of all people who DeHeng communicated with regarding the Management Entrustment Agreement.

**ANSWER:**

DeHeng's contacts related to the transaction at issue in this matter include the names of the following individuals: (i) Yonzing Song, (ii) Yarong Feng, (iii) Jeffrey Friedland, (iv) Bing Wang, (v) Wei Zhao, (vi) Darren Ofsink, (vii) Fei Chen. DeHeng does not have current contact information for these individuals.

**INTERROGATORY NO. 4:** Please state whether or not DeHeng has ever represented any of the following persons or entities, and if DeHeng did represent any of these persons or entities, please state the subject of the representation: Xi'an Amorphous Alloy Zhongxi Transformer Co., An Sen (Xi'an) Power Science and Technology Co., Ltd., China Power Equipment, Inc. or Yongzing Song.

**ANSWER:**

DeHeng signed the Retainer Agreement with Xi'an Amorphous Alloy Zhongxi

2

Transformer Co. ("Zhongxi") in connection with the scope outlined therein. Separate from its representation of Zhongxi, DeHeng has not represented An Sen (Xi'an) Power Science and Technology Co., Ltd., China Power Equipment, Inc. or Yongzing Song.

**INTERROGATORY NO. 5:** Do you contend the Management Entrustment Agreement was not a sham used to make it appear a US-listed company called China Power Equipment, Inc. exercised functional control over a PRC entity called Xi'an Amorphous Alloy Zhongxi Transformer Co. when in fact China Power Equipment, Inc. did not exercise such control? If yes, state the facts upon which and identify the documents upon which you base such contention.

**ANSWER:**

*See* Answer to Interrogatory No. 1.

**INTERROGATORY NO. 6:** Please list all money you were paid **and the source of all** such payments for any work performed by you with regard to the Management Entrustment Agreement" and the effort to list and sell shares of China Power Equipment, Inc. in the United States securities market.

**ANSWER:**

Pursuant to the Retainer Agreement, DeHeng was paid a legal fee of $55,000 for its representation of Zhongxi. This was paid by Zhongxi.

**INTERROGATORY NO. 7:** By providing the name of each corporation and the year you signed each such consent, please identify each United States corporation that has filed with the SEC a consent provided by you regarding the corporation's reliance on your opinion of PRC law.

**ANSWER:**

Chinese lawyers provide consent in many different contexts (e.g. M&A, IPO), and the VIE structures vary from one case from another depending on the industry (highly regulated or not), location (mainland China or Hong Kong), the funding needs of the clients, and many other factors. It is difficult to group every consent that DeHeng, a large-size law firm, has signed in these circumstances. Therefore, the request is irrelevant, overly broad, and seeks privileged information from DeHeng's other clients. Without waiving the objections, DeHeng responds as follows: after

3

performing a reasonable search, DeHeng has not found such consent.

**INTERROGATORY NO. 8:** For all agreements that you are aware of related to other United States entities which agreements are similar to the Management Entrustment Agreement which have successfully been enforced in China or in the United States after the operating entity refused to comply with the agreement, please state the name of the entity and state whether you were involved with the agreement.

**ANSWER:**

The Management Entrust Agreement is only part of the VIE structures, which are frequently used in different circumstances depending on the industry (highly regulated or not), location (mainland China or Hong Kong), the funding needs of the clients, and many other factors. Major Chinese companies such as Alibaba and Tencent became publicly listed companies using VIE structures. On July 2, 2016 the Chinese People's Supreme Court held that a similar VIE arrangement was legal and valid (the Ambow Education case). DeHeng was not involved in these IPOs. DeHeng is unaware of any agreements involving scenarios similar to the one posited in the interrogatory.

**INTERROGATORY NO. 9:** Please state the address and dates of operation of all transformer factories ever operated or owned by Xi'an Amorphous Alloy Zhongxi Transformer Co.

**ANSWER:**

According to the due diligence conducted by DeHeng in around 2006, Zhongxi operated at Xinyuan Chanye Plaza, No. 1 Gaoxinke Road, Cincheng District, Xi'an, Shaanxi, China, and at No. 15 Gaoxin 6th Road, Xi'an, Shaanxi, China. Finally, Zhongxi leased factory spaces located at North Factory Area, Middle Section of Daqing Road, Xi'an, Shaanxi, China. Zhongxi operated its transformer business from 2004 to 2008, and DeHeng has no information on its operating business after 2008.

**INTERROGATORY NO. 10:** Do you dispute you were hired by Yongzing Song to provide an

4

opinion that the Management Entrustment Agreement was enforceable in order to further his scheme to fraudulently raise money in the U.S. securities market? If yes, please state the factual basis for your dispute and identify the documents upon which you rely for your dispute.

**ANSWER:**

DeHeng objects to this Interrogatory because it improperly assumes a fact that has not been established: that Mr. Song was engaged in a scheme to fraudulently raise money in the U.S. securities market. DeHeng signed a Retainer Agreement with Zhongxi, of which Mr. Song was CEO. The scope of that representation is set forth in the Retainer Agreement.

**INTERROGATORY NO. 11:** Do you contend that the Management Entrustment Agreement was legal and enforceable under PRC law at the time that the "Consent" attached as Exhibit B was signed or authorized.

**ANSWER:**

Yes. *See also* Answer to Interrogatory No. 1.

**INTERROGATORY NO. 12:** Do you dispute that you advised China Power that the Management Entrustment Agreement was legal and enforceable under PRC law? If you do dispute this, please provide the factual basis for your dispute.

**ANSWER:**

Yes. DeHeng advised its client Zhongxi that the Agreement was legal and enforceable under PRC law. The basis for such position is stated in the answer to Interrogatory No. 1.

**INTERROGATORY NO. 13:** Do you dispute that you gave China Power permission to represent that you were of the opinion the Management Entrustment Agreement was legal and enforceable under PRC law? If you do dispute this, please provide the factual basis for your dispute.

**ANSWER:**

In 2008 when DeHeng gave the consent, China Power was a company created for the purpose of getting Zhongxi publicly listed in the US. Upon Zhongxi's request, DeHeng provided the Consent attached as Exhibit B.

5

**INTERROGATORY NO. 14:** Do you dispute that Zhongxi turning over its profits to An Sen under the Management Entrustment Agreement would have resulted in double taxation under PRC law? If you do dispute this, please provide the factual basis for your dispute.

**ANSWER:**

DeHeng presently lacks knowledge to agree with or to dispute the assertion contained in the interrogatory as it did not serve as tax counsel for Zhongxi nor provide tax advice related to the matters at issue in this litigation.

**INTERROGATORY NO. 15:** Do you dispute that you knew that Zhongxi and Mr. Song never intended to carry out the Management Entrustment Agreement pursuant to its terms? If you do dispute this, please provide the factual basis for your dispute.

**ANSWER:**

From 2006 to 2008, DeHeng did not know that Zhongxi and Mr. Song never intended to carry out the Management Entrustment Agreement. As exemplified by attorney Yu's statements that are quoted in the Third Amended Complaint, DeHeng urged all parties to comply with the terms of the MEA and act in accordance therewith. DeHeng has no information on the intention of Zhongxi and Mr. Song after DeHeng completed the representation in 2008.

**INTERROGATORY NO. 16:** Has Xi'an Feijing Science and Technology Co. or Xi'an Amorphous Alloy Science and Technology Co. ever owned or operated a transformer manufacturing business or factory? If yes, please provide the address for each such business or factory and provide the dates that said business or factory was operating and state what if anything was different or separate about said business or factory from Zhongxi.

**ANSWER:**

According to DeHeng's due diligence conducted in around 2006, Xi'an Feijing Science and Technology Co. operated a transformer business at the address of 6th floor, Yasen Chanye Center Office Building, No. 15 Gaoxin 6th Road, Xi'an, Shaanxi, China. According to the same due diligence, Xi'an Feijing Science and Technology Co., had operated its transformer business since 1999. After Zhongxi was established in 2004, Xi'an Feijing Science and Technology Co.

6

transferred assets and the transformer business to Zhongxi. According to information obtained by DeHeng in 2008, Xi'an Feijing Science and Technology Co. did not operate any transformer business in 2008 because of the transfer to Zhongxi. DeHeng has no information on these two companies' operating businesses after 2008.

**INTERROGATORY NO. 17**: Please describe the history of operations and assets of Xi'an Feijing Science and Technology Co., Xi'an Amorphous Alloy Science and Technology Co. and Zhongxi.

**ANSWER:**

*See* DeHeng's production (DHLO001169).

Dated: New York, New York
November 21, 2018

**AS TO OBJECTIONS ONLY:**

**LAW OFFICES OF DEAN CHO**

By: /s/ Dean T. Cho
Dean Cho

*Attorneys for Defendant DeHeng Law Offices*

7

**DEHENG LAW OFFICES**

By: _____
**Mingliang Bai**

To:   James Craig Orr, Esq.
       Heygood, Orr, & Pearson
       6363 North State Highway 161
       Irving, Texas 75038
       *Attorneys for Plaintiffs*

EX-5.2 3 ff12018a1ex5-2_mmtec.htm OPINION OF DEHENG LAW OFFICES
Case 1:16-cv-02914-KAM-JO   Document 170   Filed 11/28/18   Page 13 of 19 PageID #: 2598

Exhibit 5.2



深圳市福田区金田路安联大厦B座11层

11/F, Tower B, Anlian Plaza, Jintian Rd., Shenzhen 518026 P.R.China

电话/Tel: +86-755-88286488 传真/Fax: +86-755-88286499

www.dehenglaw.com

November 21, 2018

To: MMTEC, INC.
Room 608A, Air China Century Building,
40 Xiaoyun Road,
Chaoyang District, Beijing, 100020
People's Republic of China

*Re: Legal Opinion on Certain PRC Legal Matters*

Ladies and Gentlemen:

We are qualified lawyers of the People's Republic of China (the "PRC", for the purpose of this opinion, excluding the Hong Kong Special Administrative Region, Macau Special Administrative Region and Taiwan) and as such are qualified to issue this legal opinion (the "Opinion") according to the laws and regulations of the PRC.

We have acted as legal counsel as to all laws, regulations, statutes, rules, decrees, notices, and supreme court's judicial interpretations currently in effect and publicly available in the PRC as of the date hereof (the "PRC Laws") to (a) MMTEC, Inc. ("MMTEC" or the "Company" ), a British Virgin Islands company; (b) MM Future Technology Limited ("MM Future"), a wholly owned subsidiary of MMTEC established under the laws of Hong Kong; and (c) Gujia (Beijing) Technology Co., Ltd. ("Gujia Beijing", 股家(北京)科技有限公司in Chinese), a wholly owned subsidiary of MM Future established under the laws of the PRC, in connection with the Company's registration statement on Form F-1 (File No. 333-227934) including all amendments or supplements thereto, relating to the proposed initial public offering (the "Offering") of 1,800,000 common shares, and up to 270,000 common shares issuable upon exercise of an over-allotment option granted to the underwriters by the Company, par value US $0.001 per common share (the "Shares"), and the proposed listing (the "Listing") of the Shares on the NASDAQ Capital Market.

In giving the following opinion, we have examined the originals or certified, conformed or reproduced copies of all records, agreements, certificates issued by governmental authorities of the PRC, and other instruments that we have deemed relevant or necessary as the basis for the opinions hereinafter expressed.

In such examination, we have assumed: (a) the genuineness of all signatures on original or certified copies and the authenticity of all documents submitted to us as originals; (b) the conformity to the originals of all documents submitted to us as certified or reproduced copies; (c) that none of the documents, as they were presented to us as of the date of this opinion, has been revoked, amended, varied or supplemented; (d) that all factual representations made in all documents are correct in all material respects; and (e) that (i) the rights and obligations of the parties to any document governed by any law other than PRC Laws are (or, when such document has been duly executed, will be) legal, valid, binding and enforceable in accordance with their terms under that governing law, (ii) neither execution nor performance nor observance of any document is contrary to any law other than PRC Law, and (iii) nothing in any law other than PRC Law affects this opinion.

For facts that are not directly within our knowledge, we have relied upon the special reports, explanations and other documents, and representations and warranties provided by relevant government agencies, accounting firms, asset appraisal offices and the management and/or other representatives or shareholders of the Company.

In rendering the following opinion, we state that we are not admitted to practice in any country other than the PRC, and we express no opinion as to any laws other than the laws and regulations of the PRC. To the extent that the Registration Statement and Prospectus, or any other document referenced therein or herein, is governed by any law other than that of the PRC, we have assumed that no such other laws would affect the opinion stated herein.

Based upon and subject to the foregoing, we are of the opinion that:

(i) Currently and immediately after giving effect to the Offering, the ownership structure of Gujia Beijing complies with all existing PRC Laws.

(ii) Gujia Beijing has been duly incorporated in the PRC with limited liability and is validly existing under the laws of the PRC, with full legal person status under the laws of the PRC and its business license is in full force and effect; the articles of association, the business license and other constituent documents of Gujia Beijing comply with the requirements of applicable PRC Laws, have been approved by the relevant PRC authorities and are in full force and effect. Gujia Beijing is in good standing in the PRC.

  (iii) The ownership structure of Gujia Beijing as disclosed in the Prospectus is true and accurate and nothing has been omitted from such descriptions that would make the same misleading in any material respects.

  (iv) The equity interest of Gujia Beijing is free and clear of all liens, charges, restrictions upon voting or transfer or any other encumbrances, equities or claims, and is wholly owned by MM Future.

  (v) Gujia Beijing is not in default under or in breach of any term or condition of any agreement or instrument governed by the PRC Laws to which Gujia Beijing is a party or by which any of its properties, investments or assets are bound, except as disclosed in the Prospectus.

  (vi) Guiia Beijing has sufficient corporate right, power and authority for it to own, use, and license its assets and conduct its business in the manner described in its respective business license and in the Registration Statement and the Prospectus. Gujia Beijing has obtained all governmental authorizations from, and completed all filings with, the government agencies that are necessary for it to own, use and license its assets, conduct its business in the manner as described in its business license and in the Registration Statement and the Prospectus. Gujia Beijing is in compliance with the provisions of all such governmental authorizations in all material aspects, and Gujia Beijing has not received any notification of proceedings relating to, or has any reason to believe that any governmental agencies are considering, the modification, suspension or revocation of any such governmental authorizations. There are no circumstances which might lead to the suspension, alteration or cancellation of any of the governmental authorizations of Gujia Beijing.

  (vii) To the knowledge of such counsel after due inquiry, Gujia Beijing is not in violation of any provision of its respective organizational documents. Gujia Beijing has not taken any action nor has had any steps taken, nor has legal or administrative proceedings been commenced or threatened for the winding up, dissolution or liquidation of Gujia Beijing, nor has there been any suspension, withdrawal, revocation or cancellation of any of its respective business licenses.

  (viii) Gujia Beijing is not in breach of or violation of, or default in the performance or observance of any obligation, agreement, covenant or condition contained in any indenture, mortgage, deed of trust, loan agreement, lease or other agreement or instrument governed by the PRC Laws to which it is a party or by which it or any of its properties may be bound.

  (ix) Gujia Beijing has full, valid and clean title to all of its property, assets and intellectual property used in connection with its business, free and clear of all security interest, liens, charges, encumbrances, claims, options, restrictions and other third party rights.

  (x) Gujia Beijing is not delinquent in the payment of any taxes due and there is no tax deficiency which might be assessed against it, and there is no material breach or violation by the PRC Companies of any applicable PRC tax law or regulation.

  (xi) The labor contracts or employment agreements entered by Gujia Beijing with its respective employees are in compliance with PRC Laws.

(xii) Subject to a withholding tax of up to ten percent, Gujia Beijing has full power and authority to effect dividend payments and remittances thereof outside the PRC in United States dollars or Hong Kong dollars free of deduction and without the need to obtain any consent, approval, authorization, order, registration or qualification of or with any court or governmental or regulatory agency or body of or in the PRC.

(xiii) No stamps or other issuances or transfer taxes or duties and no capital gains, income, withholdings or other taxes are payable by or on behalf of the Company, Gujia Beijing or any Underwriter to the PRC tax authority in connection with (a) the creation, issuance, sale, and delivery of the Shares; (b) the sale and delivery by the Company of the Shares to or for the accounts of the Underwriters; (c) the execution, delivery and performance of the Underwriting Agreement by the Company; or (d) the holding, sale, delivery and transfer of the Shares by a person or entity that is not a resident of the PRC.

(xiv) The labor contracts or employment agreements entered into by Gujia Beijing and its respective employees are in compliance with the PRC Labor Law and the PRC Labor Contract Law. Gujia Beijing has registered with relevant Social Security Bureau and has paid social insurance for all of its employees.

(xv) The Regulations on Mergers and Acquisitions of Domestic Companies by Foreign Investors, or the M&A Rules, adopted by six PRC regulatory agencies in 2006 and amended in 2009, requires an overseas special purpose vehicle formed for listing purposes through acquisitions of PRC domestic companies and controlled by PRC companies or individuals to obtain the approval of the China Securities Regulatory Commission, or the CSRC, prior to the listing and trading of such special purpose vehicle's securities on an overseas stock exchange. In September 2006, the CSRC published on its official website procedures regarding its approval of overseas listings by special purpose vehicles. However, the CSRC has not issued any definitive rules or interpretations concerning whether offerings such as the Offering are subject to the CSRC approval procedures under the M&A Rules. Based on our understanding of the PRC Laws (including the M&A Rules), the CSRC's approval is not required for the Offering and the Listing, given that a) the CSRC currently has not issued any definitive rule or interpretation concerning whether the Offering is subject to this regulation; and b) no explicit provision in the M&A Rules clearly classifies the acquisition of Gujia Beijing by MM Future (which was wholly owned by a non-PRC citizen at the time of acquisition) as a type of transactions falling under the M&A Rules. However, uncertainties still exist as to how the M&A Rules will be interpreted and implemented and our opinion stated above is subject to any new laws, rules and regulations or detailed implementations and interpretations in any form relating to the M&A Rules effective after the date hereof.

(xvi) There is uncertainty as to whether the courts of the PRC would recognize or enforce judgments of United States courts or British Virgin Islands courts obtained against MMTEC or its directors or officers predicated upon the civil liability provisions of the United States federal and state securities laws. China has not signed any treaties or recognized other form of reciprocity with the United States or British Virgin Islands that would provide for the reciprocal recognition and enforcement of foreign judgments. According to the PRC Civil Procedures Law, courts in the PRC will not enforce a foreign judgment against MMTEC or its directors and officers if they decide that such judgment violates the basic principles of PRC law or national sovereignty, security or public interest.

  (xvii) There are no material legal, governmental or regulatory investigations, actions, suits or proceedings pending to which the Company is or may be a party or to which any property of the Company is or may be the subject; and to our knowledge, no such investigations, actions, suits or proceedings are threatened or contemplated by any governmental or regulatory authority or threatened by others.

  (xviii) The statements set forth in the Registration Statement and the Prospectus relating to PRC Laws or that are descriptions of agreements or instruments governed by PRC Laws under the captions "Prospectus Summary", "Risk Factors", "Dividend Policy", "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Our Business", "Management", "Related Party Transactions", "Tax Matters Applicable to U.S. Holders of Our Common Shares", "Enforceability of Civil Liabilities" and "Legal Matters" (other than the financial statements and related schedules and other financial data contained therein to which we express no opinion), are true and accurate in all material respects, and fairly present and summarize the information and matters referred to therein, nothing has been omitted from such statements which would make the statements, in light of the circumstance under which they were made, misleading in any material respect.

  Based upon our participation described above, we advise you that nothing has come to our attention that caused us to believe that:

  (a) the Registration Statement (other than the financial statements and related schedules and other financial and statistical data derived therefrom and contained therein or omitted therefrom, as to which we express no opinion), at the date and as of the time it became effective, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading;

  (b) the Prospectus (other than the financial statements and related schedules and other financial and statistical data derived therefrom and contained therein or omitted therefrom, as to which we express no view or belief), as of its date or as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact that is necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

  This Opinion is delivered solely for the purpose of and in connection with the Registration Statement filed with the U.S. Securities and Exchange Commission and may not be used for any other purpose without our prior written consent. The opinions expressed herein are as of the date hereof, and we assume no obligation to update or supplement such opinions based upon any fact or circumstance hereafter coming to our attention or any change in law which hereafter occurs.

  We hereby consent to the use of this opinion in, and the filing hereof as an exhibit to, the Registration Statement. In giving such consent, we do not thereby admit that we fall within the category of the person whose consent is required under Section 7 of the U.S. Securities Act of 1933, as amended, or the regulations promulgated thereunder.

            Sincerely,

            /s/ DeHeng Law Offices

### Form of Chinese Legal Opinion

_____, 2010

Shangri-La Tibetan Pharmaceuticals, Inc.
53 Niwang Rd
Shangri-La County, Diqing,
Yunnan Province, China 674400

Re:  **Shangri-La Tibetan Pharmaceuticals, Inc.**

Dear Sirs:

We are qualified lawyers of the People's Republic of China (the **"PRC"**) and are qualified to issue opinions on the laws and regulations of the PRC.

We have acted as PRC counsel for Shangri-La Tibetan Pharmaceuticals, Inc., a British Virgin Islands corporation (the "Company"), in connection with the preparation and filing of the Company's registration statement on Form S-1 (Registration No. 333-_____) and all amendments thereto (as amended, the "Registration Statement"), as originally filed with the Securities and Exchange Commission (the "Commission") on May __, 2010. The Registration Statement relates to the offering (the "Offering") of (i) up to 2,200,000 of the Company's common shares, $0.001 par value per share (such offered common shares, the "Offering Shares"; the Company's common shares, the "Shares"), and (ii) up to 187,500 Placement Agent Warrants exercisable to purchase one Share each as well as the Shares underlying those Placement Agent Warrants. In addition, the Registration Statement registers the resale of an aggregate of 354,275 Shares (the "Resale Shares") by certain selling shareholders.

In rendering this opinion, we have examined the originals, or copies certified or otherwise identified to our satisfaction, of documents provided to us by the Company and such other documents, corporate records, certificates issued by governmental authorities in the PRC and officers of the Company and other instruments as we have deemed necessary or advisable for the purposes of rendering this opinion.

In rendering this opinion, we have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals, the conformity with authentic original documents submitted to us as copies and the completeness of the documents provided to us. We have also assumed that no amendments, revisions, modifications or other changes have been made with respect to any of the documents after they were submitted to us for purposes of this opinion. We have further assumed the accuracy and completeness of all factual statements in the documents.

As used herein, (a) **"PRC Laws"** means all laws, regulations, statutes, orders, decrees, guidelines, notices, judicial interpretations, subordinary legislations of the PRC which are publicly available (other than the laws of the Hong Kong Special Administrative Region, Macao Special Administrative Region and Taiwan Region); (b) **"Governmental Agencies"** means any court, governmental agency or body or any stock exchange authorities of the PRC (other than the Hong Kong Special Administrative Region, Macao Special Administrative Region and Taiwan Region); (c) **"Governmental Approvals"** means all approvals, consents, waivers, sanctions, authorizations, declarations, filings, registrations, exemptions, permissions, endorsements, annual inspections, qualifications, licenses, certificates and permits required by Governmental Agencies; (d) **"Prospectus"** means the prospectus, including all amendments or supplements thereto, that forms part of the Registration Statement.

On August 8, 2006, six PRC regulatory agencies, namely, the PRC Ministry of Commerce (**"MOFCOM"**), the State Assets Supervision and Administration Commission, the State Administration for Taxation, the State Administration for Industry and Commerce, the China Securities Regulatory Commission (**"CSRC"**), and the State

Administration of Foreign Exchange ("**SAFE**") jointly adopted the Regulations on Mergers and Acquisitions of Domestic Enterprises by Foreign Investors (the **"New M&A Rule"**), which became effective on September 8, 2006. The **New M&A Rule** purports, among other things, to require offshore special purpose vehicles, or SPVs, formed for overseas listing purposes through acquisitions of PRC domestic companies and controlled by PRC companies or individuals, to obtain the approval of the **CSRC** prior to publicly listing their securities on an overseas stock exchange. On September 21, 2006, the CSRC published on its official website procedures specifying documents and materials required to be submitted to it by SPVs seeking CSRC approval of their overseas listings.

Based on our understanding of current Chinese laws, regulations and rules, including the **New M&A Rule** and the **CSRC** procedures announced on September 21, 2006:

- The Company currently controls its Chinese affiliate, Yunnan ShangriLa Tibetan Pharmaceutical Group Limited by virtue of VIE agreements between Yunnan Shangri-La Tibetan Pharmaceutical Group Limited and Technology Development Co., Ltd. and our affiliate, Yibo Information Consulting (Shenzhen) Company Ltd., a PRC company, but not through equity interest or asset acquisition which are stipulated in the New M&A Rule; and

- In spite of the lack of clarity on this issue, the CSRC currently has not issued any definitive rule or interpretation regarding whether offerings like the one contemplated by this Prospectus are subject to the New M&A Rule.

This opinion relates to the PRC Laws in effect on the date hereof.

We hereby consent to the use of this opinion in, and the filing hereof as an exhibit to, the above-mentioned Registration Statement. In giving such consent, we do not thereby admit that we fall within the category of the person whose consent is required under Section 7 of the U.S. Securities Act of 1933, as amended, or the regulations promulgated thereunder.

                                                  Yours sincerely,

                                                  DeHeng Law Offices